Dear Secretary Butterworth:
You ask substantially the following question:
May physician assistants refer a patient for involuntary evaluation pursuant to section 394.463, Florida Statutes?
As you note, the Department of Children and Families is designated as the "Mental Health Authority for the State of Florida."[1] You state that the department is responsible for the planning, evaluation, and implementation of mental health services in this state, including involuntary commitments under the Baker Act.[2] The Baker Act, Part I of Chapter 394, Florida Statutes, provides for voluntary or involuntary examination and treatment of mentally ill persons.[3] Pursuant to section 394.463(1), Florida Statutes, a person may be taken to a receiving facility[4] for involuntary examination if there is reason to believe that he or she is mentally ill and because of that mental illness has refused voluntary examination or is unable to determine for himself or herself whether examination is necessary. A determination must be made that, without care or treatment, the person is likely to suffer from neglect or refuse to care for himself or herself or that there is substantial likelihood that without care or treatment serious bodily harm to that person or others may result in the near future as evidenced by recent behavior.[5]
Section 394.463(2)(a), Florida Statutes, states that an involuntary examination may be initiated by, among others, 3. A physician, clinical psychologist, psychiatric nurse, mental health counselor, marriage and family therapist, or clinical social worker may execute a certificate stating that he or she has examined a person within the preceding 48 hours and finds that the person appears to meet the criteria for involuntary examination and stating the observations upon which that conclusion is based. . . . (e.s.)
The Baker Act contains specific definitions for terms used in the act. Section 394.455(21), Florida Statutes, defines "physician" for purposes of Chapter 394, Florida Statutes, to mean:
a medical practitioner licensed under chapter 458 or chapter 459who has experience in the diagnosis and treatment of mental and nervousdisorders or a physician employed by a facility operated by the United States Department of Veterans Affairs which qualifies as a receiving or treatment facility under this part. (e.s.)
The term "medical practitioner" is not defined by statute. Physician assistants, however, are licensed under Chapter 458, Florida Statutes.[6] In providing for physician assistants in section 458.347, Florida Statutes, subsection (1) sets forth the legislative intent:
(a) The purpose of this section is to encourage more effective utilization of the skills of physicians or groups of physicians by enabling them to delegate health care tasks to qualified assistants when such delegation is consistent with the patient's health and welfare.
(b) In order that maximum skills may be obtained within a minimum time period of education, a physician assistant shall be specialized to the extent that he or she can operate efficiently and effectively in the specialty areas in which he or she has been trained or is experienced.
(c) The purpose of this section is to encourage the utilization of physician assistants by physicians and to allow for innovative development of programs for the education of physician assistants.
Section 458.347(3) requires that "each physician or group of physicians supervising a licensed physician assistant must be qualified in the medical areas in which the physician assistant is to perform and shall be individually or collectively responsible and liable for the performance and the acts and omissions of the physician assistant."[7]
Pursuant to section 458.347(4), Florida Statutes,
(a) The boards shall adopt, by rule, the general principles that supervising physicians must use in developing the scope of practice of a physician assistant under direct supervision and under indirect supervision. These principles shall recognize the diversity of both specialty and practice settings in which physician assistants are used.
(b) This chapter does not prevent third-party payors from reimbursing employers of physician assistants for covered services rendered by licensed physician assistants.
(c) Licensed physician assistants may not be denied clinical hospital privileges, except for cause, so long as the supervising physician is a staff member in good standing.
(d) A supervisory physician may delegate to a licensed physician assistant, pursuant to a written protocol, the authority to act according to s. 154.04(1)(c).[8] Such delegated authority is limited to the supervising physician's practice in connection with a county health department as defined and established pursuant to chapter 154. The boards shall adopt rules governing the supervision of physician assistants by physicians in county health departments.
(e) A supervisory physician may delegate to a fully licensed physician assistant the authority to prescribe or dispense any medication used in the supervisory physician's practice unless such medication is listed on the formulary created pursuant to paragraph (f). A fully licensed physician assistant may only prescribe or dispense such medication under the [circumstances set forth therein].
The Board of Medicine, adopting rules to implement the statute, enacted Rule 64B8-30.012(1), Florida Administrative Code, which provides:
A supervising physician shall delegate only tasks and procedures to the physician assistant which are within the supervising physician's scope of practice. The physician assistant may work in any setting that is within the scope of practice of the supervising physician's practice. The supervising physician's scope of practice shall be defined for the purpose of this section as "those tasks and procedures which the supervising physician is qualified by training or experience to perform."[9]
In light of the above, it appears that a physician assistant licensed pursuant to Chapter 458, Florida Statutes, could constitute a "medical practitioner" as that term is used in section 394.455(21), Florida Statutes, in defining "physician" for purposes of Chapter 394, Florida Statutes. The definition requires, however, that such practitioner have experience in the diagnosis and treatment of mental and nervous disorders. In addition, pursuant to section 458.347, Florida Statutes, and the rules adopted to implement such section, the supervising physician may only delegate such tasks as are within the supervising physician's scope of practice.[10]
Accordingly, I am of the view that a physician assistant licensed pursuant to Chapter 458 or 459, Florida Statutes, may refer a patient for involuntary evaluation pursuant to section 394.463, Florida Statutes, provided that the physician assistant has experience regarding the diagnosis and treatment of mental and nervous disorders and such tasks as are within the supervising physician's scope of practice.
Sincerely,
Bill McCollum Attorney General
BM/tjw
[1] Section 394.457(1), Fla. Stat.
[2] See s. 394.457(2), Fla. Stat.
[3] See s. 394.451, Fla. Stat., stating that Part I, Ch. 394, Fla. Stat., "shall be known as `The Florida Mental Health Act' or `The Baker Act.'"
[4] See s. 394.455(32), Fla. Stat., defining "treatment facility" as any state-owned, state-operated, or state-supported hospital, center, or clinic designated by the department for extended treatment and hospitalization, beyond that provided for by a receiving facility, of persons who have a mental illness, including facilities of the United States Government, and any private facility designated by the department when rendering such services to a person pursuant to the provisions of this part. Patients treated in facilities of the United States Government shall be solely those whose care is the responsibility of the United States Department of Veterans Affairs.
[5] Section 394.463(1)(b), Fla. Stat.
[6] See s. 458.347(7), Fla. Stat., providing for licensure by the Department of Health.
[7] Section 458.357(3), Fla. Stat., further provides that a physician may not supervise more than four currently licensed physician assistants at any one time.
[8] Section 154.04(1)(c), Fla. Stat., provides:
1. A registered nurse or licensed physician assistant working in a county health department is authorized to assess a patient and order medications, provided that:
a. No licensed physician is on the premises;
b. The patient is assessed and medication ordered in accordance with rules promulgated by the department and pursuant to a protocol approved by a physician who supervises the patient care activities of the registered nurse or licensed physician assistant;
c. The patient is being assessed by the registered nurse or licensed physician assistant as a part of a program approved by the department; and
d. The medication ordered appears on a formulary approved by the department and is prepackaged and prelabeled with dosage instructions and distributed from a source authorized under chapter 499 to repackage and distribute drugs, which source is under the supervision of a consultant pharmacist employed by the department.
2. Each county health department shall adopt written protocols which provide for supervision of the registered nurse or licensed physician assistant by a physician licensed pursuant to chapter 458 or chapter 459 and for the procedures by which patients may be assessed, and medications ordered and delivered, by the registered nurse or licensed physician assistant. Such protocols shall be signed by the supervising physician, the director of the county health department, and the registered nurse or licensed physician assistant.
3. Each county health department shall maintain and have available for inspection by representatives of the Department of Health all medical records and patient care protocols, including records of medications delivered to patients, in accordance with rules of the department.
4. The Department of Health shall adopt rules which establish the conditions under which a registered nurse or licensed physician assistant may assess patients and order and deliver medications, based upon written protocols of supervision by a physician licensed pursuant to chapter 458 or chapter 459, and which establish the formulary from which medications may be ordered.
5. The department shall require that a consultant pharmacist conduct a periodic inspection of each county health department in meeting the requirements of this paragraph.
6. A county health department may establish or contract with peer review committees or organizations to review the quality of communicable disease control and primary care services provided by the county health department.
[9] Rule 64B8-30.012(2), Fla. Admin. C., provides:
The decision to permit the physician assistant to perform a task or procedure under direct or indirect supervision is made by the supervising physician based on reasonable medical judgment regarding the probability of morbidity and mortality to the patient. Furthermore, the supervising physician must be certain that the physician assistant is knowledgeable and skilled in performing the tasks and procedures assigned. (a) The following duties are not permitted to be delegated at all, except where expressly authorized by statute:
1. Prescribing, dispensing, or compounding medicinal drugs.
2. Final Diagnosis.
(b) The following duties are not permitted to be performed under indirect supervision:
1. Routine insertion of chest tubes and removal of pacer wires or left atrial monitoring lines.
2. Performance of cardiac stress testing.
3. Routine insertion of central venous catheters.
4. Injection of intrathecal medication without prior approval of the supervising physician.
5. Interpretation of laboratory tests, X-ray studies and EKG's without the supervising physician interpretation and final review.
6. Administration of general, spinal, and epidural anesthetics; this may be performed under direct supervision only by physician assistants who graduated from Board-approved programs for the education of anesthesiology assistants.
[10] This office is aware of section 458.3475, Florida Statutes, which licenses anesthesiologist assistants. However, as discussed above, s.394.455(21), Fla. Stat., requires, that the medical practitioner be experienced in the diagnosis and treatment of mental and nervous disorders, and s. 458.347, Fla. Stat., and rules adopted thereunder, provide that the supervising physician may only delegate such tasks as are within the supervising physician's scope of practice. Thus, the definition of s. 394.455(21) would not appear to encompass anesthesiologist assistants.